**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

**PENN-AMERICA INSURANCE CO.**           **CIV. ACTION NO. 3:25-00328**

**VERSUS**                                               **MAG. JUDGE KAYLA D. MCCLUSKY**

**ROOFING GUYS, L.L.C.**

<u>**MEMORANDUM RULING**</u>

Before the Court is a motion to stay proceedings [doc. # 14] filed by Defendant Roofing Guys, L.L.C.  The motion is opposed.  For reasons assigned below, IT IS ORDERED that the motion to stay is DENIED.  Instead, however, by separate judgment, the Court will dismiss the matter, without prejudice.

<u>**Background**</u>

On March 17, 2025, Plaintiff Penn-America Insurance Company ("Penn-America") filed the instant complaint for declaratory judgment against its insured, Roofing Guys, L.L.C. ("Roofing Guys"), seeking a determination that the liability policy Penn-America issued to Roofing Guys does not provide coverage for claims asserted against Roofing Guys by one of Roofing Guys' clients, Donald Evans, via reconventional demand filed in the state court suit, *Roofing Guys, LLC v. Donald Evans*, No. C-51771 (3rd JDC La.) (hereinafter, "*Evans* Suit").  *See* Compl. and Exhibits [doc. # 2 and 2-3]).  To provide context for the present dispute, the Court must back up and derive pertinent details from the related state court litigation.

Donald Evans ("Evans") is the owner of certain property in Downsville, Louisiana, that he insured through SafePoint Insurance Company ("SafePoint").  (*Evans* Suit, Reconventional and 3rd Party Demand; Compl., Exh. [doc. # 2-3]).  On or about December 9, 2023, Evans

sustained damage to his roof caused by a wind and/or hail event.  *Id*.  On April 5, 2024, Evans had the roof inspected by Raul Ronquillo ("Ronquillo"), an employee of Roofing Guys.  *Id*. That same day, Evans signed a "Representation and Service Agreement" (the "Agreement") with Ronquillo of Roofing Guys, which specified that the only sum he would have to pay Roofing Guys for necessary repairs to his home was the deductible on his homeowner's insurance policy. *Id*.

Also on April 5, 2024, Evans opened a claim with his insurer, SafePoint, for the wind and hail damage to his roof that Ronquillo found during his inspection.  *Id*.  On April 8, 2024, SafePoint sent a field adjuster to the property and issued a repair estimate for the total sum of $25,116.56, less Evans' deductible of $5,180.  *Id*.

On July 5, 2024, Roofing Guys completed the repairs on Evans' property.  *Id*.  Evans believed that Roofing Guys was working directly with SafePoint to establish an agreeable price and scope of work prior to completing the work.  *Id*.  However, on July 18, 2024, SafePoint's adjuster called Evans, and advised him that, on July 8, 2024, SafePoint had received an invoice from Roofing Guys for $99,727.98 for repairs to the property.  *Id*.  SafePoint rejected Roofing Guys' invoice and, instead, remitted the sum of $25,116.56 from its estimate, less Evans' deductible of $5,180.  *Id*.

Evans contends that Roofing Guys fraudulently inflated its invoice.  *Id*.  Thus, he forwarded the sum that he received from SafePoint, plus his deductible, to Roofing Guys in accordance with the Agreement.  *Id*.  Nonetheless, Roofing Guys, Ronquillo, and their appraisal service, Property Insurance Experts ("PIE") "relentlessly harassed" Evans to demand appraisal from his insurer and threatened to make him pay their entire, inflated invoice.  *Id*.

2

On December 16, 2024, Roofing Guys filed a Petition for Breach of Contract in the Third Judicial District Court for the Parish of Union, State of Louisiana, against Evans to recover the balance due on several invoices for services rendered.  (*Evans* Suit; Petition for Breach of Contract; Compl., Exh. [doc. # 2-3]).  On January 31, 2025, Evans filed his Answer, which included a reconventional demand against Roofing Guys, plus a third-party demand against its employee, Ronquillo, and the firm's appraisal service, PIE.  (Answer, Reconventional Demand. and 3rd Party Demand; Compl., Exh. [doc. # 2-3]).   Evans asserted tort and breach of contract claims against Roofing Guys, Ronquillo, and PIE to recover his damages, including mental anguish, emotional distress, the deductible, attorney's fees, costs, and interest.  *Id*.

Roofing Guys reported the claims asserted against it by Evans to its general liability insurance carrier, Penn-America.  *See* 3rd Roofing Guys Third-Party Demand; M/Stay, Exh. [doc. # 14-2]).  On February 12, 2025, Penn-America acknowledged receipt of the lawsuit filed against Roofing Guys but stated that it did not recognize coverage for the claims made in the lawsuit.  *Id*. On February 28, 2025, Penn-America issued another denial of coverage.  *Id*.  Just over two weeks later, on March 17, 2025, Penn-America filed the instant complaint for declaratory judgment against Roofing Guys.  (Compl. for Decl. Judgment [doc. # 2]).

Meanwhile, less than two months later, on May 14, 2025, Roofing Guys filed its Answer to Evans' reconventional demand in the *Evans* Suit and included a third-party demand against Penn-America asserting claims for Penn-America's arbitrary and capricious refusal to provide a defense and indemnity to Roofing Guys for Evans' claims against Roofing Guys in the reconventional demand.  (Ans. to Reconventional Demand and Third Party Demand against Penn-America in *Evans* Suit; M/Stay, Exh. [doc. # 14-2]).  On an unspecified date in July, Penn-

America filed its answer to the third-party demand and filed exceptions which were scheduled for disposition on December 4, 2025.  (Penn-America Opp. Memo., pgs. 2-3).

Roofing Guys filed its Answer to the instant Complaint for Declaratory Judgment on July 2, 2025.  (Answer [doc. # 8]).

On July 29, 2025, the parties filed their Rule 26(f) Case Management Report, stating that they had no objection to trial by magistrate judge.  (Rule 26(f) Case Mgmt. Report [doc. # 11]).  Pursuant to the parties' consent, the District Court referred this case to the undersigned magistrate judge to conduct all further proceedings and entry of judgment.  (Order of Reference [doc. # 12]).

On July 30, 2025, the Court reviewed the parties' Rule 26(f) Report and noted that the parties disputed whether the Court should abstain from hearing this declaratory judgment action.  (Min. Entry [doc. # 13] (citing, *inter alia*, *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)).  Accordingly, the Court stated that, unless the abstention issue was raised via appropriate motion, the Court intended to issue a scheduling order.  *Id*.

On August 12, 2025, Roofing Guys filed the instant motion to stay this case until the parallel state court lawsuit, i.e., the *Evans* Suit, is resolved.  In its brief, Roofing Guys cited district court decisions that discussed federal courts' authority to grant declaratory relief and/or whether they should exercise their discretion to refrain from hearing the matter pursuant to *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  (Roofing Guys Memo., pg. 2-3) (citing, *inter alia*, *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 179 F.Supp.3d 656, 672 (E.D. La. 2016); *Penn-Am. Ins. Co. v. Haros, L.L.C.*, Civ. Action No. 22-0706, 2023 WL 2997863, at *8 (W.D. La. Apr. 3, 2023), *R&R adopted*, 2023 WL 2992722 (W.D. La. Apr. 18, 2023) ("*Haros*")); and *Core Grp. Res., L.L.C. v.*

*Barfield*, Civ. Action No. 23-1000, 2024 WL 4511486, at *3 (W.D. La. Aug. 15, 2024), *R&R adopted,* 2024 WL 4507829 (W.D. La. Oct. 16, 2024) ("*Barfield*").  In addition to discussing whether the Anti-Injunction Act applied to prohibit the court from enjoining state court proceedings, the decisions discussed and applied the seven *Trejo* factors[1] that a district court should consider when deciding whether to exercise jurisdiction over a declaratory judgment action.  *See Hanover Ins. Co.*, 179 F.Supp.3d at 672-673; *Haros*, 2023 WL 2997863, at *8-11; and *Barfield*, 2024 WL 4511486, at *3.

However, Roofing Guys then cited the *Colorado River* abstention doctrine[2] and briefly touched upon the six factors that district courts should weigh when determining whether to abstain pursuant to *Colorado River*.  (Roofing Guys Memo., pgs. 3-4); *see also Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000) (discussing *Colorado River* factors).

On August 22, 2025, Penn-America filed its opposition to the motion to stay, arguing that abstention under *Colorado River* was inappropriate because this proceeding and the precipitating state court action were not precisely parallel.  (Penn-American Opp. Memo. [doc. # 16]).  Penn-American, however, did not specifically address the factors for abstention under *Colorado River* or *Brillhart/Wilton*.

---

[1] In *St. Paul Ins. Co. v. Trejo,* 39 F.3d 585 (5th Cir. 1994), the Fifth Circuit identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action.  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 (5th Cir. 2003).

[2] The doctrine received its name from the Supreme Court decision, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

5

On August 29, 2025, Roofing Guys filed its reply brief arguing that, although the related state court action includes more claims and parties, it also encompasses the lone request for declaratory relief at issue in this case.  *See* Roofing Guys Reply Memo. [doc. # 17]. Accordingly, the matter is ripe.

**Analysis**

## I.    *Brillhart* or *Colorado River*

"When a federal suit solely seeks declaratory relief, the district court's discretion to stay or dismiss the suit is governed by the standard derived from *Brillhart*."  *Trent v. Nat'l City Bank of Indiana*, 145 Fed. App'x. 896, 898 (5th Cir. 2005) (citing *Wilton,* 515 U.S. at 289–90. However, "when an action also involves a demand for monetary or other relief, the district court's discretion to dismiss the suit is 'narrowly circumscribed' and the propriety is governed by the broader 'exceptional circumstances' standard articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1 (1983)."  *Id*. (citations omitted). Nonetheless, if the declaratory plaintiff's request for injunctive or other relief is either frivolous or is made solely to avoid the *Brillhart* standard, then *Brillhart* remains applicable. *Black Sea Inv., Ltd.*, 204 F.3d at 652.

Here, Penn-America seeks a judgment declaring that its policy does not provide coverage for the claims asserted against Roofing Guys "and for all further and equitable relief."  (Compl., Prayer).  In its brief, however, Penn-America stated that the issue before this Court is limited to whether coverage applies to the allegations made by Evans against Roofing Guys.  (Penn-America Opp. Memo., pg. 2).  Moreover, Penn-American advanced no argument to support its request for further "equitable relief" in this case.  Accordingly, the Court finds that the request for unspecified "equitable relief" is "frivolous" in the context of determining the applicable

6

abstention standard.  *See Trent*, 145 Fed. App'x.at 898 n.3 (boiler plate requests for costs and attorney's fees do not constitute a request for coercive relief).  As a result, the instant complaint is properly treated as a pure declaratory judgment action such that the *Brillhart* abstention analysis is applicable, not *Colorado River*.  *See Trent,* 145 Fed. App'x.at 898; *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994) (when a court is considering abstaining from exercising jurisdiction over a declaratory judgment action, it must apply standards derived from *Brillhart*).

## II.    The Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . ."  28 U.S.C. § 2201(a).

The twin purposes of the Declaratory Judgment Act are "to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued . . ." and "to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (citations and internal quotation marks omitted).  However, the Declaratory Judgment Act provides the district courts with an "opportunity" rather than a "duty" to grant relief.  *Wilton*, 515 U.S. at 288.  Thus, a district is authorized, in its discretion, to stay or to dismiss a declaratory judgment action.  *Id*.

In deciding whether to maintain or dismiss a declaratory judgment suit, the district court must consider:  "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief [mandatory abstention]; and (3) whether to exercise its discretion to decide or dismiss the action [discretionary abstention]." *Sherwin-Williams Co.*, 343 F.3d at 388 (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

## III.   Justiciability

"A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967).  Stated differently, there must be an "actual controversy" between the parties that is ripe. *Orix Credit Alliance, Inc.,* 212 F.3d at 896 (citation omitted).  "[A]n actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id*.

The instant declaratory judgment complaint satisfies the foregoing requirements. Currently, there is a pending state court action seeking the converse relief.  Moreover, the matter was ripe at the time the declaratory complaint was filed. *See Haros*, 2023 WL 2997863, at *7 (justiciable controversy where the declaratory action must decide whether the subject policy affords coverage, indemnification, and defense to the policyholder).

## IV.   Mandatory Abstention

The Fifth Circuit has determined that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction-providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act." *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 776 (5ᵗʰ Cir. 1993) (citing *Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 506 (5th Cir. 1988) (*en banc*)).[3]  Thus, the court generally is not authorized to decide the merits of a declaratory judgment action when "1) a declaratory defendant has previously filed a cause of action in state court against the

---

[3] The Anti-Injunction Act provides that, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

8

declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Id*. (emphasis added).  "The want of any one factor defeats mandatory abstention." *AIX Specialty Ins. Co. v. W. States Asset Mgmt., Inc.*, Civ. Action No. 12-4342, 2013 WL 4603775, at *2 (N.D. Tex. Aug. 29, 2013) (citing *Sealed v. Sealed*, 1994 WL 487245, *2 (5th Cir. Aug. 18, 1994) (unpubl.)).  Only a very small class of highly distinguishable cases will survive the broad rule announced by *Jackson*.  *Travelers Ins. Co.*, 996 F.2d at 776.

It is not precisely clear whether mandatory abstention under *Jackson* is limited solely to federal declaratory judgment actions that are filed *after* a related state court action has been filed by the declaratory defendant against the declaratory plaintiff.[4]  Nevertheless, a significant collection of district courts find that mandatory abstention under *Jackson* does not apply when the federal declaratory action was filed prior to the parallel state court suit.[5]

Penn-America filed the instant declaratory judgment action *before* Roofing Guys filed its third-party demand against Penn-America in the *Evans* Suit.  Thus, the declaratory defendant has *not* previously filed a cause of action in state court against the declaratory plaintiff.  Because one

---

[4] In *Jackson*, the federal declaratory judgment action was filed after a previously filed suit. *Jackson*, 862 F.2d at 493.  In *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, however, the Fifth Circuit stated that the *Anti-Injunction Act* applies "even when the federal suit is filed first." *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 885 (5th Cir. 1993).

[5] *See Evanston Ins. Co. v. Gabriel,* Civ. Action No. 17-0798, 2018 WL 2728039, at *4 (W.D. Tex. June 6, 2018) (collecting cases holding that when the state court suit is filed after the federal action, that fact alone defeats mandatory abstention); *GuideOne Nat'l Ins. Co. v. Bhav Harri, LLC,* Civ. Action No. 16-0740, 2017 WL 3492216, at *3 (N.D. Tex. Aug. 15, 2017) (because plaintiff filed this declaratory judgment action before defendant filed its suit in state court, abstention is not mandatory); *Gulf Offshore Logistics, LLC v. Norris*, Civ. Action No. 16-8247, 2016 WL 7097383, at *6 (E.D. La. Dec. 5, 2016) (abstention is not mandatory where the state court suit was filed after the declaratory judgment action); *AIX Specialty Ins. Co.*, 2013 WL 4603775, at *2; *but see Scottsdale Ins. Co. v. Bayou Land & Marine*, Civ. Action No. 98-3668, 1999 WL 777714, at *5 (E.D. La. Sept. 30, 1999) (concluding that *Jackson* abstention applies even though the federal declaratory judgment action was filed before the pending state court suit).

9

of the three requirements for mandatory abstention under *Jackson*, is absent, that effectively ends the mandatory abstention inquiry. *Evanston Ins. Co.,* 2018 WL 2728039, at *4 (citing *Sealed*, 33 F.3d 1379, 1994 WL 487245, at *1–*2).

## V.       Discretionary Abstention

In *Brillhart* the Supreme Court plainly stated that,

> [o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495. Thus, "[c]onsistent with *Brillhart,* abstention from a declaratory judgment action is ordinarily appropriate when the state offers an adequate alternative forum in which to resolve the particular dispute." *Southwind Aviation, Inc.*, 23 F.3d at 950 (citation omitted).

Over the years, the Fifth Circuit has settled upon seven nonexclusive factors that the district courts must address when deciding whether to decide or dismiss a declaratory judgment action. *Sherwin-Williams Co.*, 343 F.3d at 388. These so-called *Trejo* factors include the following:

(1)     whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2)     whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3)     whether the plaintiff engaged in forum shopping in bringing the suit;

(4)     whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5)     whether the federal court is a convenient forum for the parties and witnesses;

(6)     whether retaining the lawsuit would serve the purposes of judicial

10

economy; and

(7)   whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* (citing, *inter alia, Trejo*, 39 F.3d at 590-591).  The *Trejo* factors contemplate three broad areas of concern:  factors one and seven implicate federalism and comity ideals; factors two through four analyze whether the declaratory plaintiff is trying to gain access to a federal forum on improper or unfair grounds; and factors five and six address considerations of efficiency. *Sherwin-Williams Co.*, 343 F.3d at 390-392.

The district courts are duty-bound to consider all seven *Trejo* factors on the record. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001).  Doing so here, the Court finds that the first factor favors abstention.  Whether the policy issued by Penn-America to Roofing Guys provides coverage for the reconventional demand asserted by Evans is the subject of the third-party demand that Roofing Guys brought against Penn-America in the *Evans* Suit.  Further, the third-party demand by Roofing Guys includes additional claims against Penn-America for its arbitrary and capricious denial of benefits, failure to defend and indemnify, penalties, intentional infliction of emotional distress, loss of enjoyment of life, and attorney's fees.  (Ans. to Reconventional Demand and Third-Party Demand against Penn-America in *Evans* Suit; M/Stay, Exh. [doc. # 14-2]).  Additionally, the scope of Penn-America's duty to defend will be measured against the claims brought by Evans against Roofing Guys in the same *Evans* Suit. In other words, the *Evans* Suit will resolve not only the lone issue presented in this case, but also a host of other related claims between the present parties and other interested parties.[6]

---

[6] Contrary to Penn- American's argument, "[p]erfect parallelism between the state and federal cases is not required in order for this factor to weigh in favor of dismissal." *Haros*, 2023 WL 2997863, at *12 (citations and internal quotation marks omitted).  Rather, "*Trejo* only requires a

The Court finds that factors two and three also favor abstention.  Roofing Guys reported the claims asserted against it by Evans to Penn-America, which then denied coverage.  Unless Roofing Guys intended to accept the denial of coverage without further challenge, it was inevitable that Roofing Guys would file a third-party demand against Penn-America in the *Evans* Suit.  Before Roofing Guys could do so, however, Penn-America filed the instant declaratory judgment action to resolve the coverage dispute in a preemptive strike to usurp Roofing Guys' customary prerogative as the plaintiff to choose the forum.  Furthermore, Penn-America otherwise would not have been able to remove the case to federal court because third-party demands generally are not removable.  *See Quilling v. Dynex Capital, Inc.*, Civ. Action No. 18-1618, 2019 WL 366246, at *2 (N.D. Tex. Jan. 29, 2019).  Alternatively, if Penn-America truly could not wait to be sued, it could have precipitated the matter by seeking to intervene in the *Evans* Suit.  In short, Penn-America plainly engaged in forum shopping by opting to file its declaratory judgment action in federal court.  *See* S*cottsdale Ins. Co.*, 1999 WL 777714, at *6.

The fourth factor, potential inequities, also favors abstention.  An opinion regarding coverage reached by this Court could contradict a ruling in the *Evans* Suit, which would create inequities by rewarding Penn-America for its usurpation of the plaintiff's right to select the forum.  *See Haros,* 2023 WL 2997863, at *14.

Considering that the issue presented by the instant suit is one of contractual interpretation, the Court does not envision the need for many, if any, witnesses.  However, because the parties to the declaratory judgment action apparently do not reside in Union Parish, the Court finds that this federal forum in Monroe, Louisiana would be more convenient for them.  Thus, the fifth factor marginally cuts against abstention.

---

pending state action in which all of the matters in controversy may be fully litigated in order to trigger the relevant federalism concerns." *Id*. (citations and internal quotation marks omitted).

The sixth factor favors abstention.  The purely state law issue of coverage asserted in this case also is present in the *Evans* Suit.  Moreover, the *Evans* Suit contains all of the other various state law claims asserted by other interested parties.  "It is well established that federal courts should avoid duplicative or piecemeal litigation where possible because such litigation risks inconsistent rulings and unnecessary duplication of judicial resources."  *Haros*, 2023 WL 2997863, at *14 (citation and internal quotation marks omitted).  As the court in *Haros* observed,

> [t]he state court can and undoubtedly will consider the issues of coverage, duty to defend, and indemnification, as well as the issues of liability and damages. Retaining the lawsuit in federal court would result in bifurcation of the lawsuit between two courts, which would not serve the purpose of judicial economy.

*Id*.

Penn-America contends that the coverage issue before this Court can be quickly and summarily decided without the necessity of dragging down the state court proceedings with ancillary issues.  (Penn-America Opp. Memo., pg. 2).  However, these issues, and then some, already are pending before the state court.  Moreover, the state court was set to hear exceptions related to the third-party demand against Penn-America in December 2025.  It simply is not an efficient use of judicial resources to bring this Court up to speed on the various parties and scope of the claims at issue in the *Evans* Suit, and then to resolve one limited aspect of that case, when all the issues already are before the state court.  Ultimately, "[u]sing a declaratory judgment action to race to res judicata or to change forums is thoroughly inconsistent with the purposes of the Declaratory Judgment Act and should not be countenanced."  *Travelers*, 996 F.2d at 777, n.7.

Finally, the parties did not identify a state judicial decree that this Court is being called upon to construe.  Accordingly, the seventh factor is neutral.

Upon consideration of the foregoing factors, the Court concludes that this declaratory judgment action is the poster child for *Brillhart* abstention.  This suit represents a procedural maneuver calculated to commandeer the forum selection initiative that traditionally remains the

prerogative of the aggrieved party. Resolution of the state court suit will necessarily dispose of the questions raised in the declaratory complaint. The triple considerations of federalism/comity, fairness, and judicial efficiency dictate that all issues relating to this cause of action be decided by one court. The only court that has all issues and interested parties before it is the state court.[7]

## VI.    Stay or Dismissal

When the basis for declining to maintain a declaratory judgment action is the pendency of a state court action, a stay is often preferred to dismissal. *Wilton*, 515 U.S. at 288, n.2. This is because "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Id*. However, a stay pending final determination of a state suit between the same parties that includes the same issues will have the same practical effect as a dismissal. *See PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973). Furthermore, courts in this district have routinely dismissed similarly postured declaratory judgment actions on the basis of *Brillhart*. *See, e.g.*, *Rolls-Royce Naval Marine, Inc. v. A&B Industries of Morgan City, Inc.*, 2010 WL 3947327, *4-5 (W.D. La. Sept. 15, 2010); *State Farm Fire & Cas. Co. v. LaFuria*, 2008 WL 5479635, *4 (W.D. La. Oct. 22, 2008); and *Aries Marine Corp. v. Lolly*, 2006 WL 681184, *4 (W.D. La. March 16, 2006).

Accordingly, the Court declines to stay this matter, and, instead, will dismiss it, without prejudice. *See Clarendon Am. Ins. Co. v. Grant*, Civ. Action No. 08-4286, 2009 WL 511308, at *2 (E.D. La. Feb. 27, 2009) (court has broad discretion to dismiss the action *sua sponte,* in lieu of staying it).

---

[7] In fact, it may be an abuse of discretion for this Court *not* to abstain under the instant facts. *See Magnolia Marine Transport Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1581 (5th Cir. 1992) (court abused its discretion by declining to abstain where plaintiff sought declaratory judgment solely to obtain preferred forum in which to anticipate a defense that could be raised in Louisiana state court).

14

**<u>Conclusion</u>**

For the above-assigned reasons,

IT IS ORDERED that the motion to stay proceedings [doc. # 14] filed by Defendant Roofing Guys, L.L.C. is DENIED.  Instead, by separate judgment, the Court will dismiss this matter, without prejudice.

In Chambers, at Monroe, Louisiana, on this 6th day of March, 2026.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

15